## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBERT A. DOANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-12947-JEK |
| | ) | |
| PYTHON LEADS, LLC, JACQUELYN | ) | |
| LEAH LEVINE, and ALI RAZA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON LEVINE'S MOTIONS TO DISMISS AND DOANE'S MOTIONS TO STRIKE AND FOR JURISDICTIONAL DISCOVERY

**KOBICK, J.**

Plaintiff Robert Doane brings this lawsuit against defendants Python Leads, LLC, and its cofounders, Jacquelyn Levine and Ali Raza, alleging that Python repeatedly made unsolicited calls to his cellphone, even though it is listed on the state and federal do-not-call registries. Pending before the Court are four motions: Levine's separate motions to dismiss for lack of personal jurisdiction and for failure to state a claim, Doane's motion for leave to conduct jurisdictional discovery, and Doane's motion to strike exhibits attached to the latter motion to dismiss. For the reasons that follow, the motions to dismiss and the motion for jurisdictional discovery will be denied, while the motion to strike will be granted. Specific jurisdiction exists over Levine, given her oversight and control of Python's call centers that targeted Massachusetts residents like Doane. Jurisdictional discovery is thus unwarranted. Doane has also established his standing to sue and has plausibly alleged that Levine violated state and federal law through her role in the purported telemarketing scheme.

## BACKGROUND

The Court recounts the facts based on the allegations in the complaint and its attached exhibits, assuming those allegations to be true for purposes of Levine's motions to dismiss. *See Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 80-81 (1st Cir. 2025). It also supplements those facts with the jurisdictional evidence submitted in connection with Levine's motion to dismiss for lack of personal jurisdiction. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Python is a limited liability company based in Florida that owns and operates call centers in Pakistan. ECF 1, ¶ 2. Levine, who lives in Florida, is Python's founder, Chief Executive Officer, and sole member. *Id.* ¶ 3. Raza is a resident of Pakistan who serves as Python's cofounder and Managing Director. *Id.* ¶ 4. Together, the three defendants allegedly engaged in a telemarketing scheme to generate Medicare and final expense insurance leads for their customers by using Python's call centers in Pakistan, and then by manufacturing evidence that the call recipients actually consented to their calls. *Id.* at 1 & ¶¶ 10-30.

Levine initially partnered with Raza in 2019 to make unsolicited telemarketing calls from Pakistan. *Id.* ¶ 12. Among other activities, Levine allegedly "wrote the scripts used by Python's telemarketers, set up Python's call centers in Pakistan, [and] personally trained Python's Pakistan-based telemarketers." *Id.* ¶ 3. Raza, in turn, helped Levine devise and implement Python's telemarketing practices. *Id.* ¶ 4. At their direction, Python placed millions of calls to American consumers, including consumers in Massachusetts, by using "caller-id spoofing (a process that displaces the actual caller identification with a fake local caller identification), robocalls, and prerecorded messages." *Id.* ¶ 19 (footnote omitted).

After initial outreach from Raza in January 2020, a business named Final Expense Direct ("FED") contracted with Levine and Python in March 2021 to generate live transfer leads for final expense insurance, which covers funeral and burial expenses. *Id.* ¶¶ 23-24, 38; *see* ECF 1-3. FED soon began receiving complaints from consumers alleging that they had been contacted, even though they were on the Federal Trade Commission's ("FTC") do-not-call list, in violation of Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. ECF 1, ¶ 26. Levine and Python falsely assured FED that they were TCPA compliant. *Id.* ¶ 27. They also sought to defer responsibility by misrepresenting that FED had placed the calls and fraudulently manufacturing evidence that the complaining consumers had consented to be contacted. *Id.* ¶ 28. FED ultimately paid over $100,000 to resolve the consumers' lawsuits, and it terminated its agreement with Python and Levine in June 2022. *Id.* ¶¶ 29-30.

Doane is a Massachusetts resident whose cellphone number with a Massachusetts area code (781) is on the FTC's do-not-call list and Massachusetts' do-not-call registry. *Id.* ¶¶ 1, 32, 56. In December 2021 and January 2022, he received at least 23 unsolicited calls on his cellphone. *Id.* ¶¶ 37-52, 65-66. When he later learned that those calls were associated with FED, he sent FED a letter demanding the identity of the lead provider. *Id.* ¶¶ 51-53. In response, FED identified Python and gave Doane a spreadsheet stating, incorrectly, that he had provided written consent to be contacted. *Id.* ¶¶ 54-55. Doane never consented to calls from FED or the defendants; in fact, he initially told Python's callers to stop calling him. *Id.* ¶¶ 35, 56-57. In July 2022, Doane sent Python, Levine, and its officers a Chapter 93A demand letter requesting that they immediately cease their harassing calls. *Id.* ¶ 58. When the defendants responded, they failed to provide Python's do-not-call policy or offer relief that satisfied Doane. *Id.* ¶ 59.

Doane brought this lawsuit in November 2024. ECF 1. The complaint asserts claims against the defendants for violating the TCPA, 47 U.S.C. § 227(c) (Count I), the Massachusetts Telemarketing Solicitation Act ("MTSA"), M.G.L. c. 159C (Count II), and the Massachusetts Consumer Protection Act, M.G.L. c. 93A (Count III). *Id.* ¶¶ 62-91. Levine filed separate motions to dismiss for lack of personal jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). ECF 6, 8.[1] Doane opposed those motions, requested leave to conduct jurisdictional discovery, and moved to strike three exhibits attached to the Rule 12(b)(6) motion. ECF 17, 18, 20. After Levine filed reply briefs, she and Python retained counsel, and the Court took the parties' motions under advisement following a hearing at which Levine and Python were represented. ECF 24, 33, 41, 42. Python filed its answer to the complaint in September 2025. ECF 46.

## DISCUSSION

Levine moves to dismiss Doane's claims for lack of personal jurisdiction and for failure to state a claim on which relief can be granted. As part of the latter motion, she also contests Doane's standing. The Court first addresses Levine's standing argument, as it goes to subject matter jurisdiction. It then addresses her arguments with respect to personal jurisdiction and the plausibility of Doane's claims.

## I.    <u>Standing.</u>

Levine contends that Doane lacks standing to assert his TCPA claim because he is allegedly a serial TCPA filer who invited Python's telemarketing calls and has suffered no concrete injury from the calls.

---

[1] While Levine filed the motions to dismiss on behalf of herself and Python, the Court construed the motions as filed only by Levine because she was appearing *pro se* at the time and could not represent Python. ECF 11; *see* Local Rule 83.5.5.

To invoke a federal court's authority under Article III of the U.S. Constitution, a plaintiff must demonstrate standing to bring his claims. That requires him to "show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Doane has met that burden here. The complaint alleges that he received 23 unsolicited and harassing telemarketing calls from Python between December 2021 and January 2022 on his cellphone, which was listed on the FTC's do-not-call list. ECF 1, ¶¶ 32, 37-52, 65-66. These allegations track the five elements of a TCPA claim: Doane was allegedly "(1) a residential telephone subscriber (2) [who] received more than one telephonic solicitation (3) by or on behalf of the same entity (4) during a twelve-month period (5) to a number that [he] registered on the [national do-not-call] registry." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 347 (1st Cir. 2022) (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)). Courts of appeals widely hold that even a single violation of the TCPA can constitute a concrete injury because it amounts to the very invasion of privacy and disruption of solitude that Congress sought to prevent. *See, e.g.*, *Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017). Doane also allegedly suffered "loss of concentration, loss of productivity, annoyance, aggravation, [and] emotional distress" as a result of Python's calls, injuries that fortify his standing in this case. ECF 1, ¶¶ 60-61; *see Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) (allegations that plaintiff "found Defendants' texts to be 'irritating, exploitative and invasive'" were "not necessary to show injury in fact" but indicated that she "suffered the precise sort of nuisance and privacy deprivation the TCPA was enacted to address").

Levine does not dispute that even a single unwanted phone call in violation of the TCPA is sufficient for Article III standing. Rather, she argues that Doane lacks standing because he allegedly has multiple cellphones and has filed other TCPA lawsuits. But Levine has provided no evidentiary support for her speculation that Doane has multiple cellphones or that he manufactured the unsolicited phone calls from Python. *See Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 74 (1st Cir. 2016) (permitting consideration of evidence on a Rule 12(b)(1) motion to dismiss). And her assertion that Doane has previously filed other TCPA actions does not impact his standing to advance the claims in this case, where the TCPA provides a private right of action whenever a person "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Doane's complaint adequately establishes his standing to pursue his claims.

## II.  <u>Personal Jurisdiction.</u>

Levine next contends that the claims against her should be dismissed for lack of personal jurisdiction. In considering a motion to dismiss under Rule 12(b)(2), the Court may use one of three methods to assess whether Doane has met his burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether Doane has proffered "evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d at 34. Doane cannot simply "rely on unsupported allegations in [his] pleadings." *A Corp.*, 812 F.3d at 58 (quotation marks omitted). He must instead "go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024)

(quotation marks omitted). The Court will give "credence to [Doane's] version of genuinely contested facts," *Baskin-Robbins*, 825 F.3d at 34, and will consider Levine's proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

Doane invokes both federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, respectively. *See* ECF 1, ¶ 5. The Court's role is essentially the same under either statute: to determine whether the exercise of personal jurisdiction over Levine meets the requirements of the Massachusetts long-arm statute, M.G.L. c. 223A, § 3, and the Due Process Clauses of the Constitution. *See Baskin-Robbins*, 825 F.3d at 34 & n.2.[2] Because the long-arm statute is not coterminous with due process limits on personal jurisdiction, Levine's conduct must satisfy both the statute and the strictures of due process. *See Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023); *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017).

A.    The Massachusetts Long-Arm Statute.

The Massachusetts long-arm statute authorizes, as relevant here, a court to exercise personal jurisdiction over a defendant who acts "as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in th[e] commonwealth." M.G.L. c. 223A, § 3(c). The statute must "be generously construed in favor of asserting personal jurisdiction," with the court applying a but-for causation inquiry that asks whether "the defendant's contacts with the Commonwealth constitute[d] 'the first step in a train of events that result[ed] in the personal injury.'" *Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 114 (1st Cir. 1997) (quoting *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 770 (1994)); *accord Doucet v. FCA US LLC*, 492 Mass. 204, 207-10 (2023). To fall within Section 3(c), the act or omission must be intentional,

---

[2] The Due Process Clause of the Fifth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, sets the limits of personal jurisdiction in a federal question case. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018).

rather than negligent, and must be targeted at, but not necessarily occur in, Massachusetts. *See Lyons v. Duncan*, 81 Mass. App. Ct. 766, 770 (2012) (collecting cases); *accord Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) ("Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.").

Doane has proffered evidence that, using call centers in Pakistan, the defendants repeatedly made unsolicited telemarketing calls on FED's behalf to Massachusetts residents. Between March 2021 and March 2023, Python live transferred 198 calls with Massachusetts consumers to FED. ECF 19, ¶ 12; ECF 19-9. Doane also allegedly received 23 calls from Python between December 2021 and January 2022 alone, even though his cellphone number was listed on the FTC's do-not-call list and Massachusetts' do-not-call registry. ECF 1, ¶¶ 32, 37-51, 65-66. Taken together, Doane's evidence and allegations suggests that the defendants intentionally, not just negligently or sporadically, targeted Massachusetts residents and—at least with respect to Doane—inflicted injury in the Commonwealth. In its answer, Python notably concedes the exercise of personal jurisdiction over it. ECF 46, at 10, ¶ 1.

Levine asserts that she never personally contacted any Massachusetts consumers and thus cannot be held responsible for any of Python's allegedly tortious acts in Massachusetts. But absent a supporting declaration, this assertion does not constitute evidence. *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 224 (1st Cir. 2015). And the record evidence, in any event, reveals that Levine controlled Python's call center operations in Pakistan. On a podcast with Raza in October 2022, Levine stated that she and Raza "started Python Leads together about 2 years ago" to enter "the Medicare field" with the goal of becoming "the biggest lead company in Pakistan" and "in the top 10 of lead companies in the U.S."; that Python is "American-based and Islamabad-based"

with "call centers in Pakistan"; that she "oversee[s] everything from [its] Florida and Texas offices"; and that she interviews its callers in Pakistan and talks to them "all day long, almost every single day." ECF 19-1, at 3:14-17, 5:14-20, 10:3-7, 12:11-14. Raza similarly stated, in a May 2021 email, that Levine "is the owner of this Call Center" who "was smart enough to create her own call center so she doesn't have to rely on anyone for her leads where she can control the quality, Volume and budget." ECF 19-5, at 2 (capitalization omitted). Levine is identified as Python's Chief Executive Officer in its Articles of Organization and in its 2021, 2022, 2023, and 2024 annual reports filed with the Florida Secretary of State. ECF 19-3; ECF 19-4, at 3. The contract with FED was entered into by Levine on behalf of Python "to provide the Live Transfer Leads for" FED. ECF 19-6, at 1. And Levine received four payments from FED into her personal bank account, totaling over $7,000. ECF 19-7; *see* ECF 19-8 (Python emails instructing FED to pay Levine personally); ECF 19-2, ¶ 17 (Levine's admission in a lawsuit brought by FED that it had paid her personal account).

At this stage, Doane's proffered evidence is sufficient to bring Levine within the scope of Section 3(c) of the long-arm statute. The record adequately supports Doane's position that Levine personally participated in, and benefited from, Python's call centers that targeted Massachusetts consumers like Doane. And the long-arm statute's causation standard is met here: Levine's conduct, including allegedly developing Python's call scripts, started a "train of events" that led Python's callers to repeatedly contact Doane without his permission and cause him harm in Massachusetts. *Tatro*, 416 Mass. at 770; *see* ECF 1, ¶¶ 3, 60; *Crane & Co. v. Jordan*, No. SUCV201600560BLS2, 2016 WL 5898463, at *5 (Mass. Super. Sept. 1, 2016) (imputing corporation's actions as the principal to the CEO as the agent for purposes of personal jurisdiction).

B.    <u>Due Process Requirements.</u>

Having established jurisdiction under Massachusetts' long-arm statute, Doane must also demonstrate that the exercise of personal jurisdiction over Levine comports with due process. "Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor*, 592 U.S. at 358 (quotation marks omitted). In a specific personal jurisdiction case like this one, the exercise of jurisdiction over the defendant satisfies due process if the plaintiff can "show that (1) [his] claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

1.    *Relatedness.*

Doane has established that his claims arise out of, or relate to, Levine's activities in Massachusetts. To demonstrate relatedness for tort claims, he "must show a nexus between [his] claim[s] and [Levine's] forum-based activities." *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245

(1st Cir. 2023) (quotation marks omitted). This inquiry does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor*, 592 U.S. at 362.

As discussed, Doane's evidence shows that, as Python's Chief Executive Officer, Levine personally oversaw its callers and that those callers live transferred to FED calls with 198 Massachusetts residents between March 2021 and March 2023. Python's callers, subject to Levine's oversight, also called Doane's cellphone 23 times in the span of two months, despite its presence on state and federal do-not-call lists. While Levine did not initiate the calls herself, she oversaw Python's telemarketing scheme for FED by, for example, drafting call scripts and communicating with its call centers daily. *See Traylor v. Livefree Emergency Response Inc.*, No. 24-cv-10329-IT, 2024 WL 4943042, at *5 (D. Mass. Dec. 3, 2024) (relatedness satisfied where defendant did not initiate "calls target[ing] [plaintiff] on his Massachusetts phone numbers" in part because its co-defendant's actions were imputed on agency principles). Given Levine's "substantial influence over [Python's] decision to carry on the in-forum activities," *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 469 (1st Cir. 1990), Doane "may rely in whole or in part on actions imputed to [her] through [her] agents" at Python, *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 7 (1st Cir. 2002). Based on the alleged scheme, Doane has asserted claims under the FTCA, the MTSA, and Chapter 93A. There is, on these facts, "a strong 'relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Ford Motor*, 592 U.S. at 365 (quotation marks omitted).[3]

---

[3] The specificity of Doane's factual showing distinguishes this case from *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471 (E.D. Tex. 2019), upon which Levine principally relied at the hearing. In *Cunningham*, the court lacked personal jurisdiction over the individual defendants because the plaintiff invoked only their status as corporate officers at the defendant marketing corporations and merely alleged that they "directed" others to place telemarketing calls. 359 F. Supp. 3d at 480-83. Here, by contrast, Doane does not simply invoke Levine's status as

2. *Purposeful Availment.*

Doane has also established that Levine purposefully availed herself of the Massachusetts market. To meet that requirement, he must identify "some act by which [Levine] purposefully avail[ed] [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rosenthal*, 101 F.4th at 96 (quotation marks omitted). The inquiry focuses on the voluntariness of Levine's actions—that is, whether Levine's contacts with Massachusetts resulted from her own actions—and the foreseeability that her connection with Massachusetts might cause her to be haled into the Commonwealth's courts. *See id.*

Levine's choices to sign an agreement with FED to provide it live transfers for final expense products and, in satisfaction of that agreement, to direct Python's staff to repeatedly call Massachusetts residents amount to a purposeful availment of the privilege of conducting business in Massachusetts. Because Python's staff, who are managed and controlled by Levine, deliberately targeted consumers in Massachusetts, a reasonable person in her shoes would anticipate that this conduct could augur a lawsuit in Massachusetts. *See McDermet v. Porch.com, Inc.*, No. 19-cv-10284-RGS, 2019 WL 1619867, at *2 (D. Mass. Apr. 16, 2019) (allegation that defendant "or its agents called [plaintiff's] mobile and home phone numbers that have a Massachusetts area code (978)" was "sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth"); *Russell v. 29 Prime, Inc.*, No. 13-cv-12814-NMG, 2014 WL 3510291, at *3 (D. Mass. July 10, 2014) (purposeful availment met where defendant "sought to entice Massachusetts residents to purchase its products and services, either directly or through its resellers," even though it was not present, and did not make direct sales calls, in Massachusetts).

---

Python's Chief Executive Officer to establish specific jurisdiction; instead, he has submitted evidence detailing how she oversaw its telemarketing business, including through her daily communications with its call centers. *See* ECF 1, ¶¶ 3, 13; ECF 1-1, at 5:14-20, 12:11-14.

Levine's counterarguments are unpersuasive. Python's contacts with Massachusetts were not, seen through any lens, "random, isolated, or fortuitous." *Baskin-Robbins*, 825 F.3d at 36 (quotation marks omitted). Nor does Python, for its part, challenge the exercise of personal jurisdiction over it. ECF 46, at 10, ¶ 1. Even assuming Python's "alleged calls were part of a nationwide campaign and not uniquely directed at Massachusetts," the evidence shows that its callers still repeatedly contacted consumers in the Commonwealth. ECF 7, at 7. These contacts by Python's agents, which can be imputed to Levine, are sufficient to establish purposeful availment. *See Traylor*, 2024 WL 4943042, at *6 ("[R]epeated contacts targeted at Massachusetts residents, including calls alleged to be violations of the TCPA, can be considered purposeful availment by a defendant."); *accord Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 62 (1st Cir. 2002) ("many courts have found jurisdiction" when "the defendant was not physically present in the forum" but nonetheless "initiated the transaction by mailing or calling the plaintiff in the forum").

### 3. *Reasonableness.*

The final element is whether the exercise of jurisdiction over Levine would be fair and reasonable. That inquiry requires consideration of the following factors: "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Baskin-Robbins*, 825 F.3d at 40 (quotation marks omitted). Courts employ a "sliding scale" approach, with the importance of this reasonableness inquiry varying with the strength of the plaintiff's showing on the relatedness and

purposeful availment inquiries. *Id.* The purpose of applying these "factors is to aid the court in achieving substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

On balance, the factors establish that the exercise of jurisdiction over Levine would not offend due process. Levine contends that "litigat[ing] in Massachusetts would impose a substantial financial and logistical burden." ECF 7, at 16. But because "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," Levine "must demonstrate that 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Nowak*, 94 F.3d at 718 (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)). Her unsupported assertion of a "significan[t] burde[n]" fails to meet the requisite evidentiary showing. ECF 7, at 7; *see Pritzker*, 42 F.3d at 64 (modern travel "creates no especially ponderous burden for business travelers").

The second and third factors also support the exercise of jurisdiction. Massachusetts "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Indeed, under the MTSA, "[a] court of the commonwealth may exercise personal jurisdiction over a nonresident . . . as to an action or proceeding authorized by this chapter." M.G.L. c. 159C, § 12. With respect to the third factor, "some deference" is owed to Doane's choice of forum, *Baskin-Robbins*, 825 F.3d at 41, and it would be most convenient for him to litigate this matter in Massachusetts, where he resides.

Neither party meaningfully addresses the fourth or fifth factors, which concern judicial efficiency and the states' interest in promoting substantive social policies.[4] Assuming that these

---

[4] Levine argues that factors two through five weigh in her favor because Doane allegedly settled with FED over the same telemarketing calls. While this allegation in her brief is not

factors weigh in favor of neither party, Doane has nonetheless met his burden to show that subjecting Levine to litigation in this forum comports with traditional notions of fair play and substantial justice. *See Russell*, 2014 WL 3510291, at *1, 4 (reasonableness inquiry met involving Massachusetts plaintiff who raised TCPA claims against a Nevada and California corporation). Having so concluded, the Court will deny Doane's alternative request for jurisdictional discovery. *See Morphotrust USA, LLC v. Identrix, LLC*, No. 16-cv-10074-DJC, 2016 WL 3512131, at *11 (D. Mass. June 21, 2016).

### III.    **Plausibility of Doane's Claims.**

Levine finally contends that Doane has failed to state a plausible TCPA claim against her. In evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the

---

evidence, she has attached a purported interrogatory response by FED in another lawsuit, which states that it settled with Doane on November 10, 2023 for $18,500. *See Rivera-Corraliza*, 794 F.3d at 224; ECF 9-1, at 4-5. Doane's alleged settlement with FED does not, however, change the reasonableness calculus.

complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).[5]

Levine argues that Doane fails to plausibly allege direct or vicarious liability under the TCPA because she did not personally place any of the challenged calls. The TCPA directs the Federal Communications Commission ("FCC") to promulgate regulations "to protect residential telephone subscribers' privacy rights," including to "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the FTC's] database." 47 U.S.C. § 227(c)(1), (c)(3)(F); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373-74 (2012). The FCC has, in turn, implemented regulations regarding the national do-not-call registry and internal do-not-call lists maintained by telemarketers. *See* 47 C.F.R. §§ 64.1200(c)(2), (d). Doane asserts that both regulations have been violated. ECF 1, ¶¶ 64-65. The first prohibits any "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Under the second, it is unlawful to "initiate . . . any call for telemarketing purposes to a residential telephone subscriber" without "institut[ing] procedures for maintaining a list of persons who request not to receive such calls." *Id.* § 64.1200(d). These procedures include "hav[ing] a written policy, available upon demand, for

---

[5] Doane moves to strike the three exhibits that Levine attached to her Rule 12(b)(6) motion. At the hearing, Levine's counsel stipulated that her three exhibits should not be considered at this stage in the litigation because they are not incorporated by reference in the complaint. Doane's motion to strike will, accordingly, be granted. The Court also will not consider, at this stage in the case, other factual assertions in Levine's motion to dismiss that are untethered to the complaint's factual allegations, including Levine's assertions about Doane's prior TCPA lawsuits and his alleged settlement with FED. *See* ECF 20, at 5. For this reason, Levine's initial argument—that all of Doane's claims are barred by a prior settlement or estoppel because he previously settled a lawsuit with FED over the TCPA violations—will be rejected. *See* ECF 9, at 5-7.

maintaining a do-not-call list"; requiring that personnel "engaged in any aspect of telemarketing . . . be informed and trained in the existence and use of the do-not-call list"; and mandating that such personnel "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* §§ 64.1200(d)(1)-(2), (4).

While the TCPA does not define the term "initiate," the FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call," which "generally does not include persons or entities, such as third-party retailers [on whose behalf the call is made], that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013); *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("The Ninth Circuit deferred to that [FCC] ruling and we have no cause to question it." (citation omitted)). The complaint alleges that Python's callers, not Levine herself, contacted Doane on his phone. *See* ECF 1, ¶¶ 12, 33-51, 54. Levine, for her part, allegedly "formulated, directed, controlled, had the authority to control, and actively and personally participated in [those] illegal acts and practices." *Id.* ¶ 3. Accordingly, under the FCC's interpretation, Levine is not directly liable for Python's calls. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 961 (8th Cir. 2019) (rejecting jury instruction that "would have allowed the jury to find [defendant] *directly* liable based on 'direct, personal participation,' defined as 'active oversight of, or control over' the TCPA violation, or if he 'personally authorized' it").

Nevertheless, Levine may be vicariously liable for Python's calls to Doane. As effectively endorsed by the Supreme Court, the FCC "has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations." *Campbell-Ewald*, 577 U.S. at 168 (citing *In re DISH Network*, 28 FCC Rcd. 6574). Those principles "includ[e] not only formal agency, but

17

also principles of apparent authority and ratification." *In re DISH Network*, 28 FCC Rcd. at 6584. Under the common law, a principal can be held liable for her agent's conduct when it "is *actually authorized*, whether the agent's authority be express or implied." *In re Atl. Fin. Mgmt., Inc.*, 784 F.2d 29, 31 (1st Cir. 1986) (citing Restatement (Second) of Agency §§ 7, 257 (1958)); *accord Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 37 n.6 (1st Cir. 2011). "Express authority exists when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control." *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020). Thus, the relevant inquiry is whether Python's callers had such authority from Levine to call Doane. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018).

Doane plausibly alleges that Levine exercised sufficient control over Python's callers to be held vicariously liable under the TCPA. According to the complaint, Levine "formulated, directed, controlled, had the authority to control, and actively and personally participated in" Python's telemarketing scheme. ECF 1, ¶ 3. She allegedly drafted the "the scripts used by Python's telemarketers," established its call centers in Pakistan, and "personally trained [its] Pakistan-based telemarketers." *Id.* On a podcast in October 2022, Levine confirmed that she "oversee[s] everything from [Python's] Florida and Texas offices" and talks to its callers in Pakistan "all day long, almost every single day." ECF 1-1, at 5:14-20, 12:11-14; *see* ECF 1, ¶ 13. She also entered into the contract with FED on Python's behalf to provide "the Live Transfer Leads for" FED, which led Python's callers to repeatedly contact Doane. ECF 1-3, at 1. These allegations are sufficient to plausibly establish that Levine provided express authority to Python's callers, and that she may be subject to liability under the TCPA. *See Golan*, 930 F.3d at 961 (Defendant "could potentially be held liable for the authorization, oversight, and control of conduct violating the TCPA under an agency theory."); *Doane v. Benefytt Techs., Inc.*, No. 22-cv-10510-FDS, 2023 WL 2465628, at *9

(D. Mass. Mar. 10, 2023) (rejecting actual authority theory where TCPA plaintiff did "not allege facts to plausibly suggest that defendant exercised control over any of the callers").[6]

While Levine does not meaningfully challenge Doane's claims under the MTSA and Chapter 93A, those claims are also plausibly pled. The MTSA permits an individual "who has received more than 1 unsolicited telephonic sales call within a 12-month period by or on behalf of the same person or entity in violation of" the MTSA to bring a private action. M.G.L. c. 159C, § 8(b). Among other provisions, the MTSA prohibits a "telephone solicitor" from "mak[ing] or caus[ing] to be made an unsolicited telephone sales call to a consumer" whose telephone number appears on Massachusetts' do-not-call registry and from using "a blocking device or service to circumvent a consumer's use of a call identification service or device." *Id.* §§ 3, 4. Doane alleges that he received 23 calls from Python even though his cellphone is listed on the state registry, and that Python used spoofing and other means to hide its true identity and telephone number. ECF 1, ¶¶ 19, 21, 32, 37-52, 65-66. These allegations are sufficient to state a claim against Levine under Sections 3 and 4 of the MTSA, given her alleged control and oversight of Python. *See* M.G.L.

---

[6] The TCPA damages sought by Doane are not, as Levine asserts, "legally insufficient" or "excessive." ECF 9, at 14, 18; *see* ECF 1, ¶¶ 66, 68. The TCPA provides for such damages. *See* 47 U.S.C. § 227(c)(5) (permitting recovery of "actual monetary loss" or "up to $500 in damages for each [TCPA] violation, whichever is greater"). Levine also argues that Doane has failed to mitigate his damages, but a plaintiff need not mitigate damages in a TCPA action. *See Abrahamian v. loanDepot.com LLC*, No. 23-cv-728-PHX-SMB, 2024 WL 4870494, at *5 (D. Ariz. Nov. 22, 2024) (citing *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-cv-2057-FMO-SPX, 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017)). To the extent Levine argues, without evidence, that Doane consented to Python's calls, "express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *Jones v. Montachusetts Reg'l Transit Auth.*, No. 22-1569, 2023 WL 9233970, at *3 (1st Cir. Nov. 30, 2023) (citing *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.4 (1st Cir. 2019)). The Court must accept, at this stage, Doane's allegation that he did not consent to the calls. ECF 1, ¶¶ 56-57.

c. 159C, § 1 (defining "[t]elephone solicitor" as an individual or entity "who makes or *causes to be made* a telephonic sales call" (emphasis added)).[7]

Separately, Section 2 of Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). Massachusetts courts have held that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)); *accord Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 316 (2018). An act or practice is deceptive "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Walsh*, 821 F.3d at 160 (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)). Section 9, in turn, authorizes consumers to bring an action for unfair or deceptive acts or practices. M.G.L. c. 93A, § 9.[8] To state his claim under Section 9, Doane must plausibly allege "(1) that [Levine] has committed a violation of G.L. c. 93A, § 2; (2) injury; and (3) a causal connection between the injury suffered and [Levine's] unfair or deceptive method, act, or practice." *Herman v. Admit One Ticket Agency LLC*, 454 Mass. 611, 615-16 (2009). His allegations that the defendants called him 23 times without his consent while his number was on the state and federal do-not-call lists and attempted to fraudulently manufacture evidence of his consent are sufficient to state a Chapter 93A claim. *See* ECF 1, ¶¶ 32, 37-56, 65-66; *McDermet*, 2019 WL 1619867, at

---

[7] Doane alleges other violations of the MTSA, but the Court need not address those at this stage. *See* ECF 1, ¶¶ 71-74.

[8] Section 9 also requires consumer plaintiffs to issue written demands to defendants at least thirty days before filing a claim. M.G.L. c. 93A, § 9(3). Levine does not dispute that Doane properly served her with a written demand. *See* ECF 1, ¶ 58.

*5 (denying motion to dismiss where defendant allegedly violated the TCPA and MTSA "nineteen times").

## CONCLUSION AND ORDER

For the foregoing reasons, Levine's motions to dismiss, ECF 6 and 8, are DENIED; Doane's motion to strike, ECF 17, is GRANTED; and Doane's motion for leave to conduct jurisdictional discovery, ECF 18, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: December 4, 2025                                UNITED STATES DISTRICT JUDGE

21